**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ATB MARINE, INC., | : | |
| | : | |
| Plaintiff, | : | C.A. No. |
| | : | |
| v. | : | |
| | : | |
| AES PUERTO RICO, L.P., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COMPLAINT**

COMES NOW Plaintiff, ATB Marine, Inc., ("ATB"), by and through its undersigned counsel, and hereby brings its Complaint against AES Puerto Rico, L.P. ("AES") and avers as follows:

**Parties, Jurisdiction and Venue**

1. This action, which involves disputes arising under certain maritime contracts entered into between the parties, is within this Court's admiralty and maritime subject matter jurisdiction, 28 U.S.C. §1333, and is an admiralty and maritime claim within the meaning of Fed. R. Civ. P. 9(h).

2. The Plaintiff ATB is organized as a limited liability company organized under the laws of the State of Delaware and maintains a principal place of business at 200 Dryden Drive, Dresher, PA 19025.

3. The Defendant AES is organized under the laws of the State of Delaware and maintains a principal place of business at 350 Avenida Carlos E. Chardón, Piso 10, San Juan, Puerto Rico 00918.

4. Venue is proper under 28 U.S.C. § 1391 because the Defendant AES is organized under the laws of the State of Delaware and is subject to personal jurisdiction in this District. In

addition, the underlying contracts at issue contain a forum selection clause specifying that this Court shall be the sole and exclusive venue for resolution of disputes between the parties.

**Factual Background**

5. ATB incorporates the averments of paragraphs 1 through 4 of its Complaint as if set forth fully herein at length.

6. Defendant AES is the owner and operator of a coal-burning electric generating station located in Guayama, Puerto Rico. Large quantities of coal ash are produced as a byproduct of burning the coal in the plant. In 2017 Puerto Rico enacted a law which prohibited AES from dumping or otherwise disposing of coal ash in Puerto Rico. Following enactment of the law AES began shipping the coal ash to the Keystone Marine Terminal in Jacksonville, Florida, by water. After the coal ash is discharged from a vessel in Florida it is reportedly transported to a landfill in Georgia.

7. Plaintiff ATB owns and operates tugs and barges which it uses to provide waterborne transportation of bulk cargoes for third parties.

8. On October 3, 2019, ATB and AES entered into a Time Charter contract pursuant to which ATB agreed to transport coal ash from the AES plant in Guayama, Puerto Rico, to Jacksonville, Florida, using an articulated tug-barge unit consisting of the tugboat BALTIMORE and the barge EMI 1850 ("October 2019 Charter"). The charter term was originally scheduled to end in April 2020, but the term was extended to September 24, 2020, by two contract amendments. A copy of the October 2019 Charter is attached as Exhibit 1.

9. The October 2019 Charter provided that an "on-hire survey" of the EMI 1850 was to be conducted to document its condition at the beginning of the charter term. At the end of the term an "off-hire survey" was to be conducted by an agreed surveyor to report any damage which occurred during the charter term.

10. On October 14, 2019, two marine surveyors, one appointed by ATB and the other by AES, attended on board the barge EMI 1850 in Puerto Rico to conduct an on-hire survey. Both surveyors issued reports with their findings regarding the condition of the barge's cargo hold. Copies of both reports are attached hereto as Exhibit 2.

11. On September 21, 2020, at the end of the October 2019 Charter term, a surveyor employed by DLS Marine Survey & Appraisal attended on board the EMI 1850 to conduct an off-hire survey of the barge. The surveyor issued a written report listing damages found in the cargo hold that did not exist at the time of the on-hire survey of the barge. A copy of the September 2020 off-hire report is attached as Exhibit 3.

12. On January 15, 2021, ATB and AES entered into a second Time Charter contract pursuant to which ATB again agreed to transport coal ash from the AES plant in Guayama, Puerto Rico, to Jacksonville, Florida, using the tugboat BALTIMORE and the barge EMI 1850 ("January 2021 Charter"). The charter term was originally scheduled to end on May 31, 2021, but was extended to June 8, 2021. A copy of the January 2021 Charter is attached as Exhibit 4.

13. Like the October 2019 Charter, the January 2021 Charter also required that an on-hire survey and an off-hire survey of the barge be conducted at the beginning and end of the charter term.

14. On January 26, 2021, a surveyor employed by DLS Marine Survey & Appraisal attended on board the EMI 1850 to conduct an on-hire survey of the barge. The surveyor issued a written report with a detailed explanation of the condition of the cargo hold. The observed damages were virtually identical to the damages recorded in the September 2020 off-hire survey conducted at the end of the September 2019 Charter, demonstrating that no damage to the cargo hold occurred between the end of the September 2019 Charter and the beginning of the January 2021 Charter. A copy of the January 2021 on-hire survey report is attached as Exhibit 5.

15. On June 8, 2021, at the end of the January 2021 Charter term, a surveyor employed by Advanced Maritime Consulting attended on board the EMI 1850 to conduct an off-hire survey of the barge. The surveyor issued a written report listing damages found in the cargo hold that did not exist at the time of the on-hire survey of the barge. A copy of the June 2021 off-hire report is attached as Exhibit 6.

16. On September 23, 2021, ATB and AES entered into a third Time Charter contract pursuant to which ATB again agreed to transport coal ash from the AES plant in Guayama, Puerto Rico, to Jacksonville, Florida, using the tugboat BALTIMORE and the barge EMI 1850 ("September 2021 Charter"). The charter term was originally scheduled to begin in January 2022 and end on December 31, 2024. The starting date was changed to December 10, 2021 by a contract amendment. A copy of the September 2021 Charter is attached as Exhibit 7.

17. Like the prior charter agreements, the September 2021 Charter also required that an on-hire survey and an off-hire survey of the barge be conducted at the beginning and end of the charter term.

18. On December 5, 2021, a surveyor employed by Advanced Maritime Consulting attended on board the EMI 1850 to conduct an on-hire survey of the barge. The surveyor issued a written report with a detailed explanation of the condition of the cargo hold. The observed damages were virtually identical to the damages recorded in the June 2021 off-hire survey conducted at the end of the January 2021 Charter term, demonstrating that no damage to the cargo hold occurred between the end of the January 2021 Charter and the beginning of the September 2021 Charter term. A copy of the December 2021 on-hire survey report is attached as Exhibit 8.

19. In September 2022 the tugboat BALTIMORE and barge EMI 1850 were required to be temporarily withdrawn from service and dry docked to complete required periodic inspections by the U.S. Coast Guard and the American Bureau of Shipping and to install a Ballast

Water Treatment System on the barge as mandated by federal regulations. AES agreed to the withdrawal of the vessels from service. The vessels were withdrawn from service on August 6, 2022, and arrived at the International Ship Repair & Marine Services shipyard in Tampa, Florida ("ISR Shipyard"), in mid-September 2022.

20. The physical damage in the barge's cargo hold which occurred during the September 2019 Charter and the January 2021 Charter periods did not render the barge unsafe or unseaworthy. Therefore, the damages did not require the barge to be withdrawn from service and, as is customary in the maritime industry, repair of the damage to the cargo hold was deferred until the next required shipyard period in 2022.

21. On August 6, 2022, the date on which the vessels were withdrawn from service, a surveyor employed by DLS Marine Survey & Appraisal attended on board the EMI 1850 in Norfolk, Virginia, to conduct an off-hire survey of the barge. The surveyor issued a written report listing damages found in the cargo hold that did not exist at the time of the January 2021 on-hire survey of the barge. A copy of the off-hire survey conducted on August 6, 2022, is attached as Exhibit 9.

22. A further survey of barge EMI 1850, which employed a drone to video the damages in the cargo hold, was conducted on October 5, 2022, at the ISR Shipyard, by Captain Douglas W. Covill. AES was invited to send a representative to this survey and William McNally, Manager of Fuels & Freight for AES, attended. To assist with the survey, damaged areas of the cargo hold were painted with different colors to correspond with the damage reported in the three off-hire surveys.

23. Under the terms of each Time Charter contract AES was solely responsible to arrange and pay for loading the coal ash aboard the barge in Puerto Rico, and for discharge of the cargo in Jacksonville. The ash was loaded in Puerto Rico by AES using a conveyor belt system –

no machines had to be used inside the cargo hold of the barge to load the cargo and no damage to the cargo hold was caused by the loading operations. At Jacksonville, the Keystone Marine Terminal and/or its subcontractors used several very large excavators, front-end loaders and bulldozers in the hold of the barge to discharge the ash on each voyage. The physical damages to the barge's cargo hold identified in the off-hire survey reports were all caused by the negligent misuse of these machines by AES and its subcontractors during discharge of the coal ash.

24. On March 13, 2023, after the repairs and other work on the vessels were completed by the shipyard, ATB sent a letter and supporting documents to AES detailing the charges incurred to repair the damages to the cargo hold of the barge caused by cargo discharge operations while the barge was under charter to AES before the vessels entered the shipyard. The total cost of the repairs for which AES is liable under the terms of the contracts is $2,664,380.00. A copy of the March 13, 2023, claim letter is attached hereto as Exhibit 10.

25. Despite repeated demands by ATB for payment, AES has refused to pay any portion of the repair costs.

**COUNT I**
**Breach of Contract**

26. ATB incorporates the averments of paragraphs 1 through 25 of its Complaint as if set forth fully herein at length.

27. The terms and conditions of the three Time Charter contracts that are relevant to the dispute at issue in this action were identical in all material respects.

28. Each Time Charter provides that AES, as charterer, is solely responsible for any damage to the barge caused during cargo loading or discharge, irrespective of whether the damage was the result of fault or negligence by AES:

> Damage Caused by Charterer. Charterer shall be responsible for damage to the ATB Unit caused during cargo loading or discharge operations and for any other

> damage to the ATB Unit caused by Charterer's fault or negligence. Owner shall give Charterer written notice of any such damage, including the time, date, location of damage and cause. If notice of damage is given by Owner under this Section, Charterer shall be given the opportunity to appoint a qualified marine surveyor to examine and prepare a report on the noted damage. Any damage caused during loading or discharge of cargo or as a result of Charterer's fault or negligence which affects the seaworthiness and/or the safety of the crew or proper working of the ATB Unit and/or her equipment shall be immediately repaired at the expense of Charterer, under supervision of an Owner's representative, and the ATB Unit is to remain on hire until such repairs are completed and, if required, passed by the Vessel's Classification society. Any damage caused during loading or discharge of cargo or as a result of Charterer's fault or negligence which does not affect the ATB Unit's seaworthiness and/or the safety of the crew shall be repaired, at the Charterer's time, risk and expense, following Redelivery in accordance with Paragraph 14.

See Exhibit 1, paragraph 13; Exhibit 4, paragraph 13; and Exhibit 7, paragraph 14.

29. Each Time Charter contains a Redelivery clause specifying that the barge must be returned to ATB at the conclusion of the Charter term in "as good condition as when delivered" and that AES as charterer must pay for all costs to repair damage for which AES is responsible under the Charter:

> <u>Redelivery</u>. The ATB Unit shall be redelivered to Owner at the expiration of the Initial Charter Term or any Extended Charter Term at Jacksonville, Florida, or another U.S. Gulf / U.S. East Coast port at Charterer's option, or at another location if mutually agreed by Owner and Charterer ("Redelivery"). Except as provided herein, the ATB Unit shall be redelivered by Charterer in as good condition as when delivered, ordinary wear and tear expected. At Redelivery, Owner and Charterer shall appoint a mutually agreed upon independent surveyor to conduct a survey to document, in detail, the condition of the Barge ("Off-Hire Survey") the cost of which to be shared equally shared between Owners and Charterers. In the Off-Hire Survey the surveyor shall report any differences in the condition of the Barge from the On-Hire Survey referred to in Paragraph 1 hereof. All costs to restore the Barge to its condition upon delivery, ordinary wear and tear excepted, shall be for Charterer's account, unless and except and to the extent that said damage was solely the result of Owner's fault or negligence. If at the time of the scheduled redelivery it is determined that the Barge sustained damage for which the Charterer is responsible, charter hire shall remain payable during the period of repair, and the Barge shall not be considered redelivered until she has been restored to said condition upon delivery, ordinary wear and tear excepted provided, however, that the Owner and Charterer may mutually agree on the cost to repair damage for which the Charterer is responsible at the time of Redelivery and agree that repairs may be deferred until the vessel's next scheduled repair period and provided further that if

> there is a dispute about damage or the responsibility for damage and the ATB Unit is seaworthy and capable of accepting other charters, Charterer shall not be responsible for charter hire during the time the dispute is being resolved and shall be responsible only for charter hire after a determination is made that Charterer is responsible and then for only the period during which the repairs are made.

See Exhibit 1, paragraph 14; Exhibit 4, paragraph 14, and Exhibit 7, paragraph 15.

30. AES has breached each Time Charter contract by failing to satisfy any of its various contractual obligations under the foregoing paragraphs, including but not limited to its clear obligation to pay for the costs to repair damage caused during cargo loading or discharge operations and restore the barge to its pre-charter condition.

31. After the EMI 1850 was repaired, it returned to service under the September 2021 Charter on January 29, 2023. Since that time, AES and its subcontractors have caused further significant damage to the cargo hold of the barge during discharge operations at Jacksonville by the continued negligence misuse of machines employed aboard the vessel to discharge the coal ash. AES is responsible for the costs of repairs of these additional damages and ATB reserves all of its rights to recover for the cost to repair all such damages inflicted after the barge returned to service in January, 2023, until the end of the Charter term on December 31, 2024.

32. As a direct result of AES's continuing disregard and repudiation of its contractual obligations in breach of the terms and conditions of the Time Charters, ATB has sustained significant monetary losses and damages in an amount to be fully determined at trial, including but not limited to the payment of $2,664,380.00 to the ISR Shipyard to repair the damage to barge EMI 1850 for which AES is responsible under the terms of the time charters.

**Demand For Judgment**

WHEREFORE, Plaintiff ATB Marine, LLC respectfully prays that judgment be entered in in its favor and against the Defendant AES Puerto Rico, L.P. on the claims set forth in its Complaint in an amount to be finally determined at trial, together with prejudgment interest

thereon, attorneys fees and costs, and such other and further relief the Court deems proper under the circumstances.

Respectfully submitted,

**SALMON RICCHEZZA SINGER & TURCHI LLP**

*/s/ Kyle R. Brady*
Kyle R. Brady, Esq. (DE ID #6763)
222 Delaware Avenue, 11th Floor
Wilmington, Delaware 19801
Phone: (302) 655-4290
Fax: (302) 655-4291
kbrady@srstlaw.com
*Attorney for Plaintiff,*
*ATB Marine, Inc.*

OF COUNSEL:

Frank P. DeGiulio, Esq. (*Pro Hac Vice* pending)
Daniel H. Wooster, Esq. (*Pro Hac Vice* pending)
PALMER BIEZUP & HENDERSON LLP
190 N. Independence Mall West, Suite 401
Philadelphia, PA 19106
T: (215) 625-9900
fpd@pbh.com
dwooster@pbh.com

Dated: August 8, 2024