IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ATB MARINE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 24-00922-GBW |
| | ) |
| AES PUERTO RICO, L.P. | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

Kyle R. Brady, SALMON, RICCHEZZA, SINGER & TURCHI LLP, Wilmington, DE; Frank P. DeGiulio, Daniel H. Wooster, PALMER BIEZUP & HENDERSON LLP, Philadelphia, PA– attorneys for Plaintiff.

Karine Sarkisian, KENNEDYS CMK LLP, Wilmington, DE; Cameron Cushner, Forrest Booth, Kevin Lih, Camille Zuber, KENNEDYS CMK LLP, San Francisco, CA – attorneys for Defendant.

April 24, 2025
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendant AES Puerto Rico, L.P.'s ("Defendant" or "AES") Motion to Transfer Venue (D.I. 19) ("the Motion to Transfer") and Motion to Stay Proceedings Pending Resolution of its Motion to Transfer Venue (D.I. 34) ("the Motion to Stay"). Plaintiff ATB Marine, Inc. ("Plaintiff" or "ATB Marine") opposes both Motions. (*See* D.I. 22; D.I. 36). For the reasons set forth below, Defendant's Motion to Transfer is denied and Defendant's Motion to Stay is denied-as-moot.

## I. BACKGROUND[1]

Plaintiff ATB Marine is a limited liability company organized under the laws of Delaware. (D.I. 1 ¶ 2). ATB Marine "owns and operates tugs and barges which it uses to provide waterborne transportation of bulk cargoes for third parties." (*Id.* ¶ 7). Defendant AES is a limited partnership organized under the laws of Delaware. (*Id.* ¶ 3). AES "is the owner and operator of a coal-burning electric generating station located in Guayama, Puerto Rico." (*Id.* ¶ 6). AES's station produces "[l]arge quantities of coal ash" as a byproduct of its activities. (*Id.*). In 2017, Puerto Rico prohibited the dumping and disposal of coal ash in Puerto Rico. (*Id.*). As a result, ATB Marine "agreed to transport coal ash from the AES plant in Guayama, Puerto Rico, to Jacksonville, Florida, using an articulated tug-barge unit," for AES's dumping and disposal. (*Id.* ¶ 8).

ATB Marine and AES memorialized this arrangement in three "Time Charter" contracts ("the Time Charter Contracts"). (*See* D.I. 4, Ex. 1; D.I. 4, Ex. 4, D.I. 4, Ex. 7). The Time Charter Contracts were executed in October 2019, January 2021, and September 2021, respectively. (*Id.*, Ex. 1 (October 2019 Charter); *Id.*, Ex. 4 (January 2021 Charter); *Id.*, Ex. 7 (September 2021

---

[1] When addressing a motion to transfer for improper venue, the Court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).

1

Charter)). Specifically, ATB Marine's managing agent, Express Marine Inc. ("Express Marine"), executed the contracts on behalf of ATB Marine. Express Marine's role, as managing agent to ATB Marine, is disclosed clearly in each Time Charter contract. (*See* D.I. 4, Ex. 1; D.I. 4, Ex. 4, D.I. 4, Ex. 7).

"Under the terms of each Time Charter contract[,] AES was solely responsible to arrange and pay for loading the coal ash aboard the barge in Puerto Rico, and for discharge of the cargo in Jacksonville." (D.I. 1 ¶ 23). Additionally, each Time Charter required that "AES as charterer must pay for all costs to repair damage for which AES is responsible under the Charter." (*Id.* ¶ 29). To calculate potential damage to ATB Marine's barges, surveys of the vessels were conducted at the beginning and end of each charter period. (*Id.* ¶¶ 10, 13, 17, 18).

Following the conclusion of the Time Charter Contracts, ATB Marine identified physical damage to its barge's cargo hold, requiring repairs in the amount of $2,664,380.00.[2] (*Id.* ¶¶ 23, 24). "On March 13, 2023, after the repairs and other work on the vessels were completed," ATB Marine requested payment from AES, but AES "refused to pay any portion of the repair costs." (*Id.* ¶¶ 24, 25). Consequently, ATB Marine filed the instant action alleging that AES breached its contractual obligations to "pay for the costs to repair damage caused during cargo loading or discharge operations and restore the barge to its pre-charter condition." (*Id.* ¶ 30). ATB Marine seeks "damages in an amount to be fully determined at trial, including but not limited to the payment of $2,664,380.00," prejudgment interest thereon, attorneys' fees and costs, and all other relief the Court deems just and proper. (*Id.* ¶ 32).

---

[2]  "The physical damage in the barge's cargo hold [ ] occurred during the September 2019 Charter and the January 2021 Charter periods." (D.I. 1 ¶ 20). The barge was not rendered "unsafe or unseaworthy;" thus, "repair of the damage to the cargo hold was deferred until the next required shipyard period in 2022." (*Id.*).

## II. PROCEDURAL POSTURE

On August 8, 2024, ATB Marine filed a Complaint ("the Complaint") against AES. (D.I. 1). The Complaint asserts one cause of action: Breach of Contract. (*Id.* ¶¶ 26-32). On October 15, 2024, AES filed an Answer. (D.I. 16). On January 15, 2025, Defendant AES filed the Motion to Transfer pursuant to 28 U.S.C. §1404(a). (D.I. 19). In the Motion to Transfer, Defendant AES requests transfer from this Court to the Jacksonville Division of the United States District Court for the Middle District of Florida ("the Middle District of Florida"). (D.I. 19 at 1). On January 29, 2025, Plaintiff ATB Marine filed an Answering Brief in opposition to the Motion to Transfer. (D.I. 22). On February 4, 2025, Defendant AES filed its Reply Brief in support of its Motion to Transfer. (D.I. 25). On April 2, 2025, AES filed a Motion to Stay Proceedings Pending Resolution of its Motion to Transfer ("the Motion to Stay"). (D.I. 34). That same day, AES filed its Opening Brief in support of its Motion to Stay. (D.I. 35). On April 16, 2025, ATB Marine filed an Answering Brief in opposition to the Motion to Stay. (D.I. 36). On April 23, 2025, AES filed a Rely Brief in support of its Motion to Stay. (D.I. 38).

## III. JURISDICTION

"[I]t is axiomatic that federal courts must always assure themselves that they have subject matter jurisdiction."[3] *Thomas v. City of Philadelphia*, 759 F. App'x 110, 111 (3d Cir. 2019). The United States Constitution extends the federal judicial power to "all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2, cl. 1. Separately, Congress has statutorily empowered federal district courts to hear "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. §1333(1). The "fundamental interest giving rise to maritime jurisdiction is the

---

[3] In contrast, the court need not *sua sponte* assure itself that it possesses personal jurisdiction over a defendant. *See Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir. 1969). Unlike subject matter jurisdiction, personal jurisdiction can be waived. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

protection of maritime commerce." *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 25 (2004) (internal quotation marks and citations omitted). Maritime jurisdiction arises if the "the principal objective of a contract is maritime commerce." *Id.* Here, the principal objective of the Time Charter Contracts is maritime commerce – i.e., the transport of coal ash through the ocean by vessel. As such, the Court has admiralty and maritime subject matter jurisdiction under 28 U.S.C. §1333(1).

## IV. LEGAL STANDARDS

### A. Motion to Transfer

Pursuant to 28 U.S.C. §1404(a) ("§1404(a)"), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* The party moving for transfer bears the burden of persuasion. *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). In deciding a §1404(a) motion, the Court must evaluate the parties' private interests and various public interests. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 (2013) ("*Atl. Marine*"). Relevant private interests include: "[the] plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses . . .; and the location of books and records." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted). Similarly, relevant public interests include: "the enforceability of the judgment;" "the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the

4

familiarity of the trial judge with the applicable state law in diversity cases."[4]  *Id.* at 879-80 (internal citations omitted). The Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62-63 (quoting 28 U.S.C. §1404(a)).

However, the district court's §1404(a) analysis changes in three ways when the parties' contract contains a valid forum-selection clause. *Id.* at 63. "First, the plaintiff's choice of forum merits no weight." *Id.* Second, the Court does not consider the parties' private interests and, instead, considers only the public interests. *Id.* at 64. Third, if the party defying the forum-selection clause files suit in a different forum, "a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." *Id.* Ultimately, though, "a proper application of §1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59-60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

### 1.   **Forum Selection Clauses in Maritime Contracts**

As explained above, the existence of a valid forum-selection clause changes a court's §1404(a) analysis. Accordingly, a court must first determine whether the forum-selection clause is valid and enforceable. *See Beaumont v. Vanguard Logistics Servs. (USA), Inc.*, 615 F. Supp. 3d 253, 260 (D.N.J. 2022) (assessing a §1404(a) transfer motion in a maritime action). The

---

[4]   In *Jumara*, the Third Circuit previously recognized "practical considerations that could make the trial easy, expeditious, or inexpensive" as a public interest. *Jumara*, 55 F.3d at 879. More recently, however, the Third Circuit clarified that "'practical problems that make trial of a case easy, expeditious, and inexpensive' represent a *private interest*, as the Supreme Court stated in *Atlantic Marine*." *In re Howmedica Osteonics, Corp.*, 867 F.3d 390, 402 n. 7 (3d Cir. 2017) (emphasis added). Instead, "judicial economy considerations," impacting the court's ease, expeditiousness, and expense, constitute a "distinct, cognizable public interest." *Id.*

interpretation of maritime contracts, including assessing the validity of a forum-selection clause therein, is governed by federal law.[5] *See id.*

The Supreme Court has repeatedly held that "forum-selection clauses in maritime contracts are 'prima facie valid' under federal maritime law and 'should be enforced unless' doing so would be '"unreasonable" under the circumstances.'" *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 71 (2024) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("*Bremen*")). A forum-selection clause is deemed unreasonable if the defendant demonstrates that either the forum is so "'gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,'" or "that the clause was procured through 'fraud or overreaching.'" *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *Bremen*, 407 U.S. at 15, 18). Nevertheless, "[i]n the light of present-day commercial realities and expanding international trade," a forum-selection clause in a maritime contract "should control absent a *strong showing* it should be set aside." *Bremen*, 407 U.S. at 15 (emphasis added). Furthermore, such forum-selection clauses should generally be enforced where the "choice of [the] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen." *Id.* at 12.

## V. ANALYSIS

Defendant AES asserts that the Court should transfer this case to the Middle District of Florida for three reasons: (1) it would have been a proper venue for Plaintiff ATB Marine to initiate the case; (2) a transfer "serves the convenience of the parties and witnesses;" and (3) a transfer would promote the interests of justice. (D.I. 19, Ex. 1 at 4). In opposition, Plaintiff ATB Marine

---

[5] When a federal court decides a maritime case, it acts as a federal 'common law court,' much as state courts do in state common-law cases." *Air & Liquid Sys. Corp. v. DeVries*, 586 U.S. 446, 452 (2019). Thus, "the federal courts fashion maritime rules based on, among other sources, 'judicial opinions, legislation, treatises, and scholarly writings.'" *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70 (2024) (quoting *DeVries*, 586 U.S. at 452).

draws the Court's attention to the forum-selection clauses in the Time Charter Contracts, all of which designate this Court as the exclusive venue for any dispute arising from the Time Charter Contracts. (*See* D.I. 22 at 5). ATB Marine asserts that the forum-selection clauses bar transfer, and that AES has not met its heavy burden in demonstrating that the forum-selection clauses should be overcome. (*See id.* at 6-8). The Court agrees with Plaintiff ATB Marine.

### A. The Forum-Selection Clauses are Valid and Enforceable

All three Time Charter Contracts contain an identical forum-selection clause. That clause provides:

> Jurisdiction. Any dispute arising under this Charter or the performance hereof shall be submitted to and decided by the United States District Court for the District of Delaware, which court shall be the sole and exclusive venue and forum for the resolution of disputes arising out of this Charter, to the exclusion of any other forum, venue or jurisdiction. Owner and Charterer consent to and agree to submit to the jurisdiction of said court and, being sophisticated commercial entities, irrevocably waive any right to demand a jury trial in such proceedings.

(D.I. 4, Ex. 1 ¶ 31; *id.*, Ex. 4 ¶ 31; *id.*, Ex. 7 ¶ 32).

In the Time Charter Contracts, ATB Marine is denoted as "Owner" and AES is denoted as "Charterer." (*See* D.I. 4, Ex. 1 at 2). As such, each Time Charter contract explicitly contains a forum-selection clause whereby ATB Marine and AES "consent to and agree to" submit to the jurisdiction of this Court, the District of Delaware, the "sole and exclusive venue and forum for the resolution of disputes arising out of this Charter." (*Id.* ¶ 31).

Nevertheless, AES asserts that the forum-selection clauses are unenforceable and irrelevant in this action. To support its assertion, AES argues that "there is no contract between the Plaintiff [ATB Marine] and AES." (D.I. 25 at 2). AES contends that the Time Charter Contracts are "agreement[s] between AES and a different company, Express Marine, Inc." and, thus, ATB Marine may not enforce the Time Charter Contracts' forum-selection clauses against it. (*Id.*

7

(emphasis excluded)). AES also claims that it did not understand the term "managing agent" because it was not defined. (*Id.* n.1). The Court, however, finds AES's arguments to be both misleading and disingenuous.[6]

First, it is indisputable that AES knowingly entered into the Time Charter Contracts with "Express Marine, as Managing Agent for *ATB Marine LLC*." (D.I. 4, Ex. 1; D.I. 4, Ex. 4; D.I. 4, Ex. 7 (emphasis added)). It is a well-settled principle of agency law that "when an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, [ ] the *principal* and third party are parties to the contract." Restatement (Third) of Agency § 6.01 (emphasis added); *see also Bloom v. JP Morgan Chase Bank N.A.*, Case No. 21-2348, 2022 WL 3699362, 2022 U.S App. LEXIS 24073, at *5 (3d Cir. Aug. 26, 2022) (stating same rule). Here, the agency relationship was clearly disclosed in both the text of the Time Charter Contracts and on the signatory line. Indeed, the very first sentence of each Time Charter contract states that Express Marine is "acting in its capacity as managing agent for ATB Marine." (*See* D.I. 4, Ex. 1, at 2). Had AES truly not understood the relationship between ATB Marine and Express Marine, – or, more generally, agent-principal relationships – AES should have made an inquiry before signing the Time Charter Contracts. *See Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 394 (S.D.N.Y. 2014) ("[C]ourts applying general principles of contract law have little empathy for parties who fail to read and make sure they understand the terms of agreements they sign," especially when the signatory is a "sophisticated corporate party.").

Second, ATB Marine is explicitly denoted in the Time Charter Contracts as the "Owner." This is because ATB Marine owns the tug and barge which AES contracted to lease – the whole

---

[6] The Court reminds Defendant AES's counsel that they owe duties of candor to the Court. *See* Del. Law. R. Prof. Conduct 3.3, 4.1, and 8.4.

premise of the Time Charter Contracts. (*See* D.I. 4, Ex. 1 at 2 ("Tug and Barge [are] collectively referred to herein as the 'ATB Unit.'"); *see also* D.I. 22 at 1 (Explaining that this is "a form of maritime contract by which a vessel owner (here, Plaintiff ATB Marine, Inc.) allows its vessel to be used by a charterer (here, Defendant AES Puerto Rico, L.P.) for the carriage of cargo over an agreed period of time.")). The Time Charter Contracts explicitly contain a forum-selection clause that binds not only AES, but also the "Owner," ATB Marine. (D.I. 4, Ex. 1 ¶ 31). Furthermore, each Time Charter contract states that all rights, privileges, and liabilities arising from the contract "shall be available to . . . the Owner." (*Id.* ¶ 27). Therefore, AES was explicitly informed of ATB Marine's interest and rights under the Time Charter Contracts.[7]

In light of the aforementioned provisions, it is clear that AES contracted with ATB Marine, albeit through ATB Marine's managing agent, Express Marine. AES knew that Express Marine was acting as an agent for ATB Marine and that the District of Delaware was the sole venue for the resolution of disputes arising out of the Time Charter Contracts. Accordingly, AES's lack-of-contract argument is without merit.

---

[7] Even assuming *arguendo*, that ATB Marine was not a party to the Time Charter Contracts, which it is, AES's argument remains unpersuasive. "[A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013). "In such instances, the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id.*; *see also In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 64 (3d Cir. 2018) (holding same). Provided that ATB Marine is "the Owner" of the leased property, and is explicitly provided with all rights, privileges, and liabilities arising out of the Time Charter Contracts, ATB Marine is a "closely related party" who can enforce the forum selection clause against the signatory, AES. Therefore, aside from basic principles of agency law, it should have been entirely foreseeable to AES that ATB Marine could enforce the forum-selection clause in the Time Charter Contracts.

9

In summary, the Court finds that the forum-selection clauses apply to the present admiralty action between Plaintiff ATB Marine and Defendant AES. There is no evidence, and AES does not argue, that the forum-selection clauses are "unreasonable and unjust" or that the forum-selection clauses were procured through "fraud or overreaching." *Bremen*, 407 U.S. at 15 ("The correct approach [is] to enforce the forum clause specifically unless [Defendant] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."). Therefore, the forum-selection clauses are valid and enforceable against AES. *See Great Lakes Ins. SE*, 601 U.S. at 71.

### B.   A Transfer is Unwarranted Under §1404(a)

Because the Time Charter Contracts contain enforceable, identical forum-selection clauses, the Court's §1404(a) analysis differs. *See Atl. Marine*, 571 U.S. at 62-65. The Court cannot consider private interests, including "whether the claim arose elsewhere," "the convenience of the witnesses," or "the location of books and records." *Jumara*, 55 F.3d at 879 (listing private interest factors). The Court also does not consider "relative ease of access to sources of proof," "possibility of view of premises, if view would be appropriate to the action," and "all other practical problems that make trial of a case easy, expeditious and inexpensive [for the parties]." *Atl. Marine*, 571 U.S. at 63 n. 6 (describing private interest factors) (quotation marks and citation omitted). Instead, the Court "may consider arguments about public-interest factors only," which "will rarely" justify a departure from the forum-selection clause. *Id.* at 64.

Defendant AES asserts that, even if the Court finds that the forum-selection clauses apply, the case should be transferred to the Middle District of Florida because the District of Delaware is a seriously inconvenient forum. (D.I. 25 at 4). Specifically, AES asserts that "all known evidence is believed to be located in the Middle District of Florida," and "the Middle District of Florida is better equipped to handle a truly local dispute under maritime law." (D.I. 25 at 5). In opposition,

Plaintiff ATB Marine contends that AES's assertions primarily concern "private interests, not public ones, and [private interests] carry no weight in the face of a valid-forum selection clause." (D.I. 22 at 8). Ultimately, the Court agrees with Plaintiff. Defendant AES has failed to persuade the Court that the public interest factors support transfer. Rather, Defendant AES improperly focuses on private interest factors.[8] (*See* D.I. 19, Ex. 1 at 6 (AES listing "private interest factors"); *see also* D.I. 25 at 5 (AES listing relevant evidence located "in and near Jacksonville, Florida.")).

The public interest factors "derive from the interest of justice" and include the following: (1) ability to enforce a judgment; (2) administrative difficulties based on court congestion; (3) "local interest in deciding local controversies at home;" (4) "public policies of the fora;" and (5) "familiarity of the trial judge with the applicable state law in diversity cases." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) ("*Howmedica*") (internal quotation marks and citation omitted). On balance, these factors do not support a transfer in this case.

This first factor is neutral because both fora are equally capable of enforcing a judgment. *See Howmedica*, 867 F.3d at 410 (stating that it is "'unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or another.'"). The second factor, the administrative difficulties of each forum, weigh against transfer. The most

---

[8] Defendant misapplies the relevant law in two ways. First, in its Opening Brief, AES argues that the location of "records or books" and the location of "witnesses" are public interest factors. (D.I. 19, Ex. 1 at 5). Defendant is incorrect. The Third Circuit has explicitly held that "the convenience of the witnesses" and "the location of books and records" are *private* interests. *Jumara*, 55 F.3d at 879 (internal citations omitted). Second, Defendant asserts that "this exceptional case warrants consideration of both private and public interest factors." (D.I. 25 at 5). However, this assertion is unsupported. The Court is unaware of any caveat or authority for "exceptional cases," which this is not, that contradicts the Supreme Court's mandate: where a valid forum-selection clause applies, "a district court may consider arguments about public-interest factors *only*." *Atl. Marine*, 571 U.S. at 64 (emphasis added).

recent Federal Judicial Caseload Statistics indicate that the Middle District of Florida has a more congested docket than the District of Delaware. U.S. District Courts-Civil: Civil Cases Filed, Terminated, and Pending, Federal Judicial Caseload Statistics (Mar. 31, 2024), https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/federal-judicial-caseload-statistics-2024-tables. Furthermore, "there is no showing that this case would be decided any more quickly in the Middle District of Florida than it would in this Court, which has already issued a scheduling order and set a trial date." (D.I. 22 at 8 (referring to D.I. 21)). Thus, remaining in the District of Delaware would serve judicial economy. The third factor, the "local interest in deciding local controversies at home," weighs in favor of transfer. *Howmedica*, 867 F.3d at 402 (internal quotation marks and citation omitted). The instant action "concerns damage to an American vessel alleged to have occurred in Jacksonville," Florida, and "damage to the barge is a local issue to Jacksonville, Florida, not Delaware." (D.I. 25 at 4, 5). The fourth factor, the public policies of the fora, weighs against transfer because "Delaware has a strong public policy in favor of enforcing forum selection clauses." *Whirlpool Corp. v. Davide Cabri*, C.A. No. 21-00979-EJW, 2022 WL 1421126, 2022 U.S. Dist. LEXIS 81545, at *24-25 (D. Del. May 5, 2022); *see, e.g., Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. LLC*, 67 A.3d 373, 383 (Del. 2013) ("[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause[.]") (quoting *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010)). The fifth factor, the familiarity of the trial judges with the applicable law, is neutral. As explained above, either court must

proceed in admiralty over this action. Both fora are equally capable of interpreting and applying federal maritime law.[9] *See supra* at note 5.

In summary, one factor weighs in favor of transfer, two factors are neutral, and two factors weigh against transfer. Thus, on balance, the public interest factors weigh against transfer. Moreover, and significantly, Defendant has not met its burden of showing why the "court should [ ] transfer the case [away from] the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 64. "Whatever 'inconvenience' [AES] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Bremen*, 407 U.S. at 17-18. There are no unique or unusual circumstances which would justify the Court in departing from the forum-selection clause. *Atl. Marine*, 571 U.S. at 63 ("'[A] forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'") (quoting *Stewart Org., Inc.*, 487 U.S. at 33). Therefore, the Court denies Defendant's Motion to Transfer to the Middle District of Florida.[10]

## VI.  CONCLUSION

For the reasons explained above, the Court denies Defendant's Motion to Transfer (D.I. 19) and denies-as-moot Defendant's Motion to Stay (D.I. 34). The Court will enter an Order consistent with the findings and rulings contained in this Memorandum Opinion.

---

[9]  The Time Charter Contracts also contain a choice-of-law provision requiring the application of "general maritime law of the United States," or, in the absence of such applicable law, "the laws of the State of New York." (D.I. 4, Ex. 1 ¶ 30; D.I. 4. Ex. 4 ¶ 30; D.I. 4, Ex. 7 ¶ 31). Although it is true that "[courts have] traditionally enforced choice-of-law provisions in maritime contracts," courts must nevertheless apply federal maritime law to determine the applicability of choice-of-law provisions. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65 at 71 (2024).

[10]  Because the Court denies Defendant's Motion to Transfer, Defendant's Motion to Stay Proceedings Pending Resolution of its Motion to Transfer Venue (D.I. 34) is denied-as-moot.