**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ATB MARINE, LLC,

Plaintiff,

v.

AES PUERTO RICO, L.P.,

Defendant and Third-Party Plaintiff,

v.

LOGISTEC GULF COAST LLC, DUKE ENERGY FLORIDA, LLC, MOSAIC GLOBAL SALES, LLC and AMRIZE CEMENT INC.,

Third-Party Defendants.

Civil Action No. 24-922-GBW

**MEMORANDUM ORDER**

Pending before the Court are the following motions:

1. Third-Party Defendant Logistec Gulf Coast LLC ("Logistec") Motion to Dismiss Plaintiff ATB Marine, LLC's ("ATB Marine") Complaint ("Logistec's Motion to Dismiss ATB Marine's Complaint") (D.I. 86), which has been fully briefed (D.I. 87; D.I. 96; D.I. 98);

2. Logistec's Motion to Dismiss Defendant and Third-Party Plaintiff AES Puerto Rico, L.P.'s ("AES") Second Amended Third-Party Complaint ("Logistec's Motion to Dismiss AES's SATPC") (D.I. 137), which has been fully briefed[1] (D.I. 138; D.I. 145);

[1] The Court notes that no reply was filed by Logistec.

3. Third-Party Defendant Mosaic Global Sales, LLC's ("Mosaic") Motion to Dismiss ATB Marine's Complaint and AES's Second Amended Third-Party Complaint ("Mosaic's Motion to Dismiss") (D.I. 150), which has been fully briefed (D.I. 151; D.I. 156; D.I. 157);

4. Third-Party Defendant Duke Energy Florida, LLC's ("Duke Energy") Motion to Dismiss AES's Second Amended Third-Party Complaint ("Duke Energy's Motion to Dismiss") (D.I. 161), which has been fully briefed (D.I. 162; D.I. 166; D.I. 169);

5. Third-Party Defendant Amrize Cement Inc.'s ("Amrize") Motion to Dismiss ATB Marine's Complaint and AES's Second Amended Third-Party Complaint ("Amrize's Motion to Dismiss") (D.I. 167), which has been fully briefed (D.I. 168; D.I. 171; D.I. 175); and

6. Mosaic's Motion to Stay Discovery Pending Resolution of the Motion to Dismiss (D.I. 177) that Amrize and Duke Energy join (D.I. 181; D.I. 183) ("Motion to Stay Discovery"), which has been fully briefed (D.I. 177; D.I. 182; D.I. 184).

For the following reasons, the Court grants Duke Energy's Motion to Dismiss (D.I. 161); grants-in-part and denies-in-part Logistec's Motion to Dismiss AES's SATPC (D.I. 137); grants-in-part and denies-in-part Mosaic's Motion to Dismiss (D.I. 150); grants-in-part and denies-in-part Amrize's Motion to Dismiss (D.I. 167); denies Logistec's Motion to Dismiss ATB Marine's Complaint (D.I. 86); and denies the Motion to Stay Discovery(D.I. 177; D.I. 182; D.I. 184).

## I. BACKGROUND

Plaintiff ATB Marine is a limited liability company organized under the laws of Delaware. D.I. 1 ¶ 2. ATB Marine "owns and operates tug and barges which it uses to provide waterborne transportation of bulk cargoes for third parties." *Id.* ¶ 7. Defendant and Third-Party Plaintiff AES is a limited partnership organized under the laws of Delaware. *Id.* ¶ 3. AES "is an owner and operator of a coal-burning electric generating station located in Guayama, Puerto Rico." *Id.* ¶ 6.

AES's station produces "[l]arge quantities of coal ash" as a byproduct of its activities." *Id.* In 2017, Puerto Rico prohibited the dumping and disposal of coal ash in Puerto Rico. *Id.* As a result, ATB Marine "agreed to transport coal ash from the AES plant in Guayama, Puerto Rico, to Jacksonville, Florida, using an articulated tug-barge unit," for AES's dumping and disposal. *Id.* ¶ 8. ATB Marine and AES memorialized this arrangement in three "Time Charter" contracts (the "Time Charter Contracts"). *See* D.I. 4, Exs. 1, 4, 7. The Time Charter Contracts were executed on October 2019, January 2021, and September 2021, respectively. *Id.*

"Under the terms of each Time Charter contract[,] AES was solely responsible to arrange the pay for loading the coal ash aboard the barge in Puerto Rico, and for discharge of the cargo in Jacksonville." D.I. 1 ¶ 23. Additionally, the Time Charter Contracts required that "AES as charter must pay for all costs to repair damage for which AES is responsible under the Charter." *Id.* ¶ 29. To calculate any potential damage to ATB Marine's barge, on-hire and off-hire surveys of the barge were conducted at the beginning and end of each charter period. *Id.* ¶ 10, 13, 17, 18. All three of the off-hire surveys identified new damage to the barge's cargo hold. *Id.* ¶ 11, 15, 21.[2] On October 5, 2022, an additional survey was conducted using a drone, which a representative of AES attended. *Id.* ¶ 22. During the survey, the areas of damage in the cargo hold were marked with different colors corresponding to the damage identified in the three off-hire surveys. *Id.*

Following the conclusion of the Time Charter Contracts, ATB Marine identified physical damages in its barge's cargo hold, requiring repairs in the amount of $2,664,380.00.[3] *Id.* ¶¶ 23,

[2] "The physical damage in the barge's cargo hold [] occurred during the September 2019 Charter and January 2021 Charter periods." D.I. 1 ¶ 20. The barge was not rendered "unsafe or unseaworthy;" thus, "repair of the damage to the cargo hold was deferred until the next required shipyard period in 2022." *Id.*

[3] ATB Marine and AES stipulated that this action is limited to damages arising from events occurring between October 3, 2019 and January 29, 2023. D.I. 69 ¶ 2.

24. "On March 13, 2023, after repairs and other work on the vessels were completed by the shipyard," ATB Marine requested payment from AES, but AES "refused to pay any portion of the repair costs." *Id.* ¶¶ 24, 25. Consequently, ATB Marine filed the instant action alleging that AES breach its contractual obligations to "pay for the costs to repair damage caused during cargo loading or discharge operations and restore the barge to its pre-charter condition." *Id.* ¶ 30. ATB Marine "seeks damages in an amount to be fully determined at trial, including but not limited to the payment of $2,644,380.00," prejudgment interest thereon, attorneys' fees and costs, and all other relief the Court deems just and proper. *Id.* ¶ 32.

On June 5, 2025, AES filed a Third-Party Complaint against Logistec Gulf Coast LLC ("Logistec") and Stingray Maritime LLC ("Stingray")[4] for the alleged damages to ATB Marine's barge. D.I. 48. AES amended its Third-Party Complaint twice. D.I. 81; D.I. 135. On February 18, 2026, the Second Amended Third-Party Complaint ("SATPC"), the operative pleading was filed, asserting claims of negligence, equitable indemnity, comparative indemnity and contribution, and declaratory relief against Logistec, Duke Energy Florida, LLC ("Duke Energy"), Mosaic Global Sales, LLC ("Mosaic") and Amrize North America, Inc. ("Amrize")[5] (collectively, the "Third-Party Defendants") for the alleged damage to ATB Marine's barge. D.I. 135. AES also asserts a claim for breach of implied warranty of workmanlike performance against Logistec. *Id.*

According to AES, "Logistec was the primary stevedoring company providing cargo-handling services" to the barge from October 3, 2019 to January 29, 2023. *Id.* ¶ 11. Therefore,

---

[4] Subsequently, AES voluntarily dismissed Stingray. D.I. 71

[5] Holcim (US) LLC was originally named in the SATPC, but the parties subsequently stipulated to correct the designation to Amrize North America, Inc. D.I. 154.

"if the barge was damaged as alleged by [ATB Marine] in its Complaint . . . the alleged damage was due to the negligent stevedoring work provided by Logistec, and/or other Third-Party Defendants, and not by any act or omission of AES." *Id.* ¶ 13. Accordingly, "Logistec should be wholly or partly liable to AES and [ATB Marine], pursuant to Rule 14(c)(1) of the Federal Rules of Civil Procedure or, alternatively, under 28 U.S.C. § 1367(a)." *Id.* ¶ 18. Additionally, "Duke Energy, Mosaic, and [Amrize], each chartered, utilized, loaded and unloaded the barge at various times, both before, during, and after the period August 13, 2018, through January 2023, for and involving the carriage of bulk cargoes consisting of, *inter alia*, coal, petcoke, limestone, and fertilizer." *Id.* ¶ 19. The parties either unloaded their cargoes themselves or retained stevedoring agents to perform the unloading, using heavy equipment, such as "clamshell buckets, bulldozers, front end loaders and excavators," which "caused physical damage to the barge during each unloading." *Id.* ¶ 20. ATB Marine "did not record or keep detailed records of damage done and the dates when it occurred" and now "seeks to hold only AES responsible for said damage." *Id.* ¶ 21. Thus, AES "demands judgment [pursuant to Fed. R. Civ. P. 14(c)(2)] against the Third-Party Defendants, and each of them, in favor of AES and [ATB Marine]" for the alleged damage, "including but not limited to costs, expenses, and attorney's fees." *Id.* at 9.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6)

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must set forth enough facts that, if accepted as true, "state a claim to relief

that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79). "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

**B. Fed. R. Civ. P. 14(c)**

Under Federal Rule of Civil Procedure 14(c)(1), if a plaintiff asserts an admiralty or maritime claim under Rule 9(h), then a defendant (or a person asserting rights under Supplemental Rule C(6)(a)(i)) may bring in a third-party defendant who may be "wholly or partly liable – either to the plaintiff or to the third-party plaintiff – for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 14(c)(1). Furthermore, Rule 14(c)(2) provides that the third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant, in which case the third-party defendant must defend against both the plaintiff's and the third-party plaintiff's claims as if directly sued by the plaintiff. *See* Fed. R. Civ. P. 14(c)(2).

## III. DISCUSSION

ATB Marine's Complaint alleges a breach of contract claim against AES. *See generally* D.I. 1. AES's SATPC alleges five causes of actions: (I) negligence against the Third-Party Defendants; (II) implied warranty of workmanlike performance against Logistec; (III) equitable indemnity against the Third-Party Defendants; (IV) comparative indemnity and contribution against the Third-Party Defendants and; (V) declaratory relief against the Third-Party Defendants. *See generally* D.I. 135. Duke Energy moves to dismiss AES's SATPC for lack of personal jurisdiction. D.I. 161. The remaining Third-Party Defendants move to dismiss both ATB Marine's Complaint and AES's SATPC for failure to state a claim and laches. D.I. 86; D.I. 137; D.I. 150; D.I. 167. The Court addresses the parties' motions and arguments below.

### A. The Court Grants Duke Energy's Motion

#### 1. The Court Lacks Personal Jurisdiction Over Duke Energy

Duke Energy moves to dismiss AES's SATPC, contending that the Court lacks a sufficient basis to exercise personal jurisdiction over it. D.I. 162. To establish personal jurisdiction, AES must show that (1) "there is a statutory basis for jurisdiction under the forum state's long arm statute" and (2) "the exercise of jurisdiction comports with [Duke Energy's] right to due process." *L'Athene, Inc. v. Earthspring LLC*, 570 F. Supp. 2d 588, 590 (D. Del. 2008).

AES's SATPC contains no allegations establishing that this Court has personal jurisdiction over Duke Energy. *See generally* D.I. 135. AES's allegations concerning jurisdiction are limited to maritime/admiralty subject matter jurisdiction under 28 U.S.C. § 1333(a) and supplemental jurisdiction. *Id.* ¶ 1. AES contends that "no independent jurisdictional basis is required for AES's Rule 14(c) claims in this admiralty case." D.I. 166 at 5. According to AES, there is no dispute that the Court has admiralty jurisdiction over the underlying dispute concerning the alleged damage to the barge. *Id.* In AES's view, because its claims arise from the same damage and seek

to allocate responsibility among the Third-Party Defendants involved in the resulting harm, the Court may exercise jurisdiction over its claims against Duke Energy as part of the same dispute. *Id.*

AES's position is incorrect. Subject matter jurisdiction and personal jurisdiction are two distinct, separate inquiries. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-83 (1999). Therefore, the existence of federal admiralty subject matter jurisdiction does not automatically establish personal jurisdiction. *See N. Shipping, LLC v. Thai Spring Fish Co.*, No. 16-23222, 2017 WL 7794277, at *2 (S.D. Fla. Aug. 15, 2017) ("Although the Court finds that it has subject matter jurisdiction in admiralty, the Complaint as alleged does not establish personal jurisdiction."); *Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F. Supp. 434, 439 (S.D.N.Y. 1976) (dismissing a third party defendant's motion for lack of personal jurisdiction in a maritime tort action). AES asserts that it "does not allege that the Court has general jurisdiction herein, only specific jurisdiction." D.I. 166 at 2. However, AES's SATPC is devoid of any factual allegations sufficient to establish a prima facie showing of personal jurisdiction over Duke Energy.

"Specific jurisdiction arises out of a defendant's forum-related conduct, in that a defendant 'should reasonably anticipate being haled into court' in that forum." *Osco Motors Co., LLC v. Marine Acquisition Corp.*, No. 13-868, 2014 WL 2875374, at *9 (D. Del. June 24, 2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "It is essential . . . that there be some act by which the [party] purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). When there has been a showing of minimum contacts, the "contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). "While the court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor, the plaintiff must sufficiently allege facts which establish with reasonable particularity that jurisdiction over the defendants exists." *Osco Motors Co., LLC*, 2014 WL 2875374, at *9 (internal citations omitted).

As discussed above, to establish personal jurisdiction, AES must demonstrate both a statutory basis for jurisdiction under Delaware's long arm statute and that the exercise of jurisdiction comports with Duke Energy's constitutional right to process. *See L'Athene, Inc.*, 570 F. Supp. 2d at 590. Although AES asserts that this Court may exercise specific jurisdiction over Duke Energy, the SATPC is devoid of any factual allegations supporting that assertion. The SATPC, for example, does not allege any statutory basis for the exercise of personal jurisdiction under Delaware's long-arm statute. *See generally* D.I. 135. Even if AES had alleged one of the statute's specific jurisdiction provisions, the SATPC would still fail because it does not allege facts establishing that Duke Energy's conduct has a sufficient connection to Delaware. *See Osco Motors Co., LLC*, 2014 WL 2875374, at *9 (explaining that subsections (c)(1)-(3) and (5)-(6) of Delaware's long-arm statute are specific jurisdiction provisions, where there must be a nexus between Delaware, the cause of action, and the conduct of the defendant as a basis for jurisdiction). The SATPC does not allege that Duke Energy purposely directed any conduct toward Delaware, transacted business in Delaware, or otherwise established the requisite contacts with Delaware. *See generally* D.I. 135.

To the extent that AES relies on its allegation that Duke Energy transacted business in Delaware, that allegation is insufficient to establish personal jurisdiction. *See id.* ¶ 5 (alleging that Duke Energy "is registered to do business and does business in the state"). The allegation is

entirely conclusory and contains no factual details establishing that Duke Energy transacted business in Delaware. Moreover, Duke Energy proffers evidence establishing that it is an LLC organized under the law of Florida, with its principal place of business in St. Petersburg, Florida, and its registered agent in Plantation, Florida. D.I. 161, Ex. A ¶¶ 7-11. Duke Energy also submits evidence demonstrating it does not conduct business in Delaware. *Id.* Once Duke Energy submitted evidence contradicting the jurisdictional allegations in the SATPC, AES was required to come forward with evidence of its own supporting jurisdiction. *See In re FTX Trading Ltd.*, No. 22-11068 , 2026 WL 2149961, at *6 (Bankr. D. Del. July 24, 2026) ("If a defendant moving for dismissal under Federal Rule 12(b)(2) submits an affidavit contradicting the allegations of a complaint supporting personal jurisdiction, the plaintiff cannot rest on its complaint and must submit its own evidence in support of jurisdiction."). AES fails to do so. AES's response identifies no evidence contradicting Duke Energy's showing or otherwise establishing that Duke Energy transacted business in Delaware. *See generally* D.I. 166. Absent such allegations, AES cannot establish a statutory basis for specific jurisdiction or demonstrate that Duke Energy's alleged conduct bears the necessary connection to Delaware. Therefore, the Court finds that AES has failed to show this Court has personal jurisdiction over Duke Energy. [6]

[6] To the extent AES contends that supplemental jurisdiction under 28 U.S.C. § 1367(a) confers personal jurisdiction, that contention likewise fails for the reasons discussed above. See *Lampe v. Xouth, Inc.*, 952 F. 2d 697, 700-01 (3d Cir. 1992) ("It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment."); *D'Anzieri v. Harrison Glob. LLC*, No. 21-8506, 2022 WL 17404254, at *8 (S.D.N.Y. Dec. 2, 2022) ("Supplemental jurisdiction allows a federal court to exercise jurisdiction over a claim for which it lacks original, or subject-matter, jurisdiction. A court must have personal jurisdiction over a defendant in addition to subject-matter or supplemental jurisdiction, unless the defendant waives personal jurisdiction.")

### 2. Fed. R. Civ. P. 14(c) Does Not Confer Personal Jurisdiction

Additionally, although AES's argument is not entirely clear, AES appears to contend that the Court may exercise personal jurisdiction over Duke Energy because AES properly impleaded Duke Energy under Rule 14(c). *Id.* at 3-4. That argument likewise fails. Rule 14(c) provides a procedural mechanism for impleading a party in an admiralty or maritime action; it does not, by itself, confer personal jurisdiction over that party. Fed. R. Civ. P. 14(c); *see also Gen. Marine Const. Corp. v. United States*, 738 F. Supp. 586, 589 (D. Mass. 1990) ("Rule 14(c) clearly means that an action properly commenced in admiralty should be permitted to comprehend, *consistent with principles of personal jurisdiction*, related claims to which additional parties may be joined on account of the same transaction, occurrence, or series of transactions or occurrences." (internal citations omitted) (emphasis added)). Therefore, even assuming AES properly impleaded Duke Energy under Rule 14(c), AES must establish a statutory and constitutional basis for the exercise of personal jurisdiction over Duke Energy. *Id.* As the Court explained above, AES fails to satisfy this requirement. Thus, AES's reliance on Rule 14(c) does not cure the SATPC's failure to establish personal jurisdiction over Duke Energy.

### 3. AES Fails to Establish a Basis for Jurisdictional Discovery

AES's failure to allege facts sufficient to establish personal jurisdiction over Duke Energy likewise defeats any request for jurisdictional discovery. In order to justify jurisdictional discovery, AES must present "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [Duke Energy] and the forum state.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F. 2d 1217, 1223 (3d Cir. 1992)). AES points to no specific facts that, if developed through discovery, would establish the requisite jurisdictional contacts between Duke Energy and Delaware. *See* D.I. 166 at 7 (requesting limited discovery on topics unrelated to Duke

Energy's contacts with Delaware). Absent such a showing, jurisdictional discovery is unwarranted. *See MIG Invs. LLC v. Aetrex Worldwide*, Inc., 852 F. Supp. 2d 493, 509 (D. Del. 2012) ("Jurisdictional discovery may be denied where the party that bears the burden of establishing jurisdiction fails to establish a threshold prima facie showing of personal jurisdiction." (internal quotations omitted)).

For the foregoing reasons, the Court finds that it lacks personal jurisdiction over Duke Energy and, therefore, grants Duke Energy's Motion to Dismiss.

### B. The Court Denies Dismissal of ATB Marine's Complaint

#### 1. ATB Marine Was Not Required to Assert a Separate Claim Against Third-Party Defendants in its Complaint

Third Party Defendants[7] move to dismiss ATB Marine's breach of contract claim, contending that ATB Marine fails to state a claim because the Time Charter Contracts are between ATB Marine and AES, not the Third-Party Defendants. D.I. 87 at 10; D.I. 151 at 8; D.I. 168 at 6-7. For the reasons set forth below, the Court finds that ATB Marine was not required to assert a separate breach of contract claim against the Third-Party Defendants in its Complaint.

ATB Marine's Complaint asserts a breach of contract claim against AES. *See* D.I. 1 ¶¶ 26-32. ATB Marine does not contend that the Third-Party Defendants were parties to the Time Charter Contracts or that the Third-Party Defendants breached any contractual obligation owed to ATB Marine. D.I. 96 at 3. Rather, AES's SATPC asserts claims against the Third-Party Defendants for negligence, contribution, indemnification and implied warranty of workmanlike performance[8] arising from the alleged damage to the barge. *See generally* D.I. 135. The SATPC

---

[7] With Duke Energy having been dismissed from this action, Logistec, Amrize, and Mosaic remain as the Third-Party Defendants.

[8] AES asserts a claim for implied warranty of workmanlike performance against only Logistec. *See* D.I. 135 ¶¶ 26-30.

also expressly demands judgment in favor of AES and ATB Marine against the Third-Party Defendants, which is the procedure contemplated by Rule 14(c)(2). *Id.* at 9

Rule 14(c), which governs impleader in admiralty and maritime claims, "permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F. 3d 233, 242 (5th Cir. 2009); *see also* Fed. R. Civ. P. 14(c)(1). When the third-party plaintiff tenders the third-party defendant to the plaintiff, Rule 14(c)(2) provides that the third-party defendant "must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim," and "the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff." Fed. R. Civ. P. 14(c)(2). As one court has explained, the Rule permits the court to "indulge in a legal fiction and proceed under the pretend assumption that the plaintiff had in fact sued the third-party defendant." *United States v. M/V COSCO BUSAN, LR/IMO Ship. No. 9231743*, No. 07-6045, 2008 WL 4938106, at *4 (N.D. Cal. Nov. 17, 2008). Importantly, however, "Rule 14 does not say that, by its operation, the plaintiff *does in fact* sue a third-party defendant brought in by the third-party plaintiff." *Id.* (emphasis in original).

Third-Party Defendants' arguments are identical to those advanced by the third-party defendants in *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1018 (9th Cir. 1999). There, as here, the plaintiff's complaint asserted claims against the original defendants but did not contain specific allegations against the third-party defendants. *Royal*, 194 F.3d at 1018. The third-party defendants argued that they could not be held liable because the plaintiff had not asserted any direct claims against them in plaintiff's complaint. *Id.* The Ninth Circuit rejected that argument, holding that the plaintiff "was not required to make specific allegations against the third-party

defendants." *Id.* The court explained that Rule 14(c) creates a "direct relationship" between plaintiff and third-party defendant and permits the third-party plaintiff to "demand judgment directly in favor of plaintiff and against the third-party defendant." *Id.* The court further observed that "the direct relationship created by Rule 14(c) between [plaintiff] and the third-party defendants required [plaintiff] to assert its claims directly against those parties," thereby obviating the need for plaintiff to assert its claims separately against the third-party defendants and "avoiding 'a separate suit for contribution or repetitious pleadings.'" *Id.* at 1019 (quoting *Riverway Co. v. Trumbull River Servs., Inc.*, 674 F. 2d 1146, 1154 (7th Cir. 1982)).

The same principle applies here. ATB Marine was not required to assert a separate claim against the Third-Party Defendants in its Complaint. *Royal* makes clear that the absence of specific allegations against a third-party defendant in the plaintiff's complaint does not preclude liability under Rule 14(c). *Id.*; *Goodloe Marine, Inc. v. Caillou Island Towing Co., Inc.*, No. 8:20-CV-679, 2021 WL 5051983, at *5 (M.D. Fla. Nov. 1, 2021) (recognizing that a properly tendered third-party defendant must defend against the plaintiff's claim even where the plaintiff did not originally assert the claim against that third-party defendant).

ATB Marine's breach of contract claim against AES rests on alleged barge damage, which was in breach of the Time Charter Contracts. *See generally* D.I. 1. AES's SATPC asserts that the alleged damage to the barge was caused by Third-Party Defendants' negligence and failure to take reasonable measures. D.I. 135 ¶ 24. Moreover, AES invokes Rule 14(c)(2) and expressly demands judgment in AES and ATB Marine's favor against the Third-Party Defendants. *See* D.I. 135 at 8. Under Rule 14(c), AES's allegations of liability against Third-Party Defendants are sufficient to bring those parties into a "direct relationship" with ATB Marine, even though ATB Marine's Complaint does not separately assert claims against them. *Royal*, 194 F.3d at 1018. Thus, the

Third-Party Defendants' contention that ATB Marine's Complaint contains no allegations establishing a contractual relationship between ATB Marine and the Third-Party Defendants does not provide a basis for dismissal. *See id.* at 1019. Therefore, the Court denies Third-Party Defendants' motions to dismiss ATB Marine's Complaint for failure to state a claim.

### 2. The Court Declines to Dismiss ATB Marine's Complaint Under the Doctrine of Laches

Logistec moves to dismiss ATB Marine's Complaint, asserting that the breach of contract claim is time-barred under the doctrine of laches because the Complaint neither rebuts the presumption of prejudice nor offers factual allegations to excuse the delay. D.I. 87 at 7. "Under Third Circuit law, the measure of timeliness in bringing a suit on an admiralty claim is governed by the equitable doctrine of laches." *Picchi v. Summit N. Marina, Inc.*, No. 06-193, 2007 WL 1100508, at *3 (D. Del. Apr. 12, 2007). "For a defense of laches to be successfully invoked, the Court must find both an inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay." *Lasseigne v. Nigerian Gulf Oil Co.*, 397 F. Supp. 465, 473 (D. Del. 1975). Although maritime claims governed by laches are not subject to a controlling statute of limitations, courts may look to a relevant state's statute of limitations as a benchmark in assessing whether the doctrine applies. *United New York Sandy Hook Pilots Ass'n v. Rodermond Indus., Inc.*, 394 F.2d 65, 74 (3d Cir. 1968). "If the local statute of limitations has not run, it is generally presumed that the defendant has not been prejudiced; if it has run, the converse is presumed." *Id.* at 75. Moreover, "[i]f the analogous state statute of limitations has not expired, defendant bears the burden of proving both elements of laches. [If] that statute has expired, the plaintiff bears the burden on both inexcusable delay and prejudice (though he avoids laches by carrying the burden on either)." *Lasseigne*, 397 F. Supp. at 473 (cleaned up).

### a. New York's Six-Year Statute of Limitations for Contractual Claims Is the Proper Analogue

As a threshold matter, the parties dispute which state's statute of limitations provides the appropriate analogous limitations period for purposes of the Court's laches analysis. Logistec contends that Delaware's three-year statute of limitations for contractual claims supplies the proper benchmark. D.I. 87 at 7. ATB Marine, however, asserts that the Time Charter Contracts contain valid choice-of-law provisions selecting New York law, and that New York's six-year statute of limitations period therefore provides the appropriate analogue. D.I. 96 at 1; D.I. 1, Ex. 4 ¶ 30. Logistec counters that it is not bound by the Time Charter Contracts' choice-of-law provisions because it was not a party to the contracts, which were executed between ATB Marine and AES. D.I. 98 at 6-7. Thus, Logistec maintains that the choice-of-law provisions are inapplicable and cannot determine the analogous limitations period.

The Court finds that New York's six-year limitations period provides the more appropriate analogue. The selection of an analogous limitations period for purposes of laches is distinct from determining the law governing the parties' contractual obligations. *See Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018) ("Although laches is distinct from a statute of limitation, we make laches determinations with reference to the limitations period for the analogous action at law." (internal citations omitted)). The question before the Court is not whether New York law governs Logistec's obligations under the Time Charter Contracts, as Logistec was not a party to the contracts. Rather, the relevant inquiry is which limitations period most closely corresponds to the claims before the Court and therefore provides the appropriate benchmark for evaluating laches. *United New York Sandy Hook Pilots Ass'n*, 394 F.2d at 74.

Although the Time Charter Contracts' choice of law provisions do not bind Logistec, absent an independent basis for imposing contractual obligations on a non-party, the provisions

nevertheless remain relevant to the Court's identification of the analogous limitations period. *See Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Dann Ocean Towing, Inc.*, 756 F.3d 314, 319 (4th Cir. 2014) (holding that a "valid choice-of-law provision in a maritime contract is enforceable and may require application of a jurisdiction's statute of limitations, in lieu of the doctrine of laches, to govern issues regarding the timeliness of claims asserted under that agreement"). AES's claims against Logistec arise from the same alleged damage for which ATB Marine seeks to hold AES liable under the Time Charter Contracts. *See generally* D.I. 135. The limitations period prescribed by New York law, as selected in the contracts, therefore provides the appropriate benchmark for determining whether ATB Marine's claims were brought within a reasonable time. Applying New York's statute of limitations period as a benchmark does not enforce the choice of law provisions against Logistec. Instead, it informs the Court's determination of the limitations period most closely related to the claims at issue. *See Kane v. Union of Soviet Socialist Republics*, 189 F.2d 303, 305 (3d Cir. 1951) ("[t]he analogy to the state statute of limitations is only an analogy and not a rule").

**b. Logistec Fails to Establish Delay or That It Suffered Prejudice As a Result of That Delay**

Having found that New York's six year limitations period is the appropriate analogous period, the Court concludes that the period has not lapsed. The alleged breaches, as stipulated, occurred between October 3, 2019 and January 29, 2023. *See* D.I. 69 [9]. ATB Marine filed its Complaint on August 8, 2024. *See* D.I. 1. Thus, ATB Marine's claims fall within the six year analogous period, and Logistec bears the burden of establishing that ATB Marine unreasonably

[9] "On a motion to dismiss the Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered." *Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 722 F. Supp. 859, 861 (D. Del. 1991).

delayed in asserting its claims, and that Logistec suffered prejudice as a result of that delay. *See Lasseigne*, 397 F. Supp. at 473.

The Court finds that Logistec has failed to meet its burden of establishing laches. In its attempt to establish delay, Logistec contends that ATB Marine had knowledge of the alleged damage identified in the Off-Hire Surveys beginning in 2020. D.I. 87 at 9. However, Logistec fails to show how such knowledge rendered ATB Marine's subsequent decision to pursue its claims in August 2024 unreasonable, particularly where ATB Marine filed suit within the analogous six-year limitations period and the damage was continuous throughout the time period. Because Logistec has failed to demonstrate unreasonable delay, the Court need not consider whether Logistec suffered prejudice. *See Lasseigne*, 397 F. Supp. at 473.

For the foregoing reasons, the Court declines to dismiss ATB Marine's Complaint on the grounds of laches.

### C. The Court Dismisses-in-Part AES's SATPC

#### 1. The Court Declines to Dismiss AES's Negligence Claim

##### a. AES Sufficiently Pleads a Maritime Negligence Claim

Third-Party Defendants move to dismiss AES's negligence claim for failure to state a claim. D.I. 138 at 12-19; D.I. 151 at 11-12; D.I. 158 at 7-10. Specifically, Third-Party Defendants assert that AES's allegations are threadbare and conclusory, do not establish that a duty of care was owed to AES, and fail to allege actual damages attributable to Defendants' purported negligence. *Id.* "In order to prevail on a claim of maritime negligence a plaintiff must prove that there was: 1) a duty of care which obliges the person to conform to a certain standard of conduct; 2) a breach of that duty; 3) a reasonably close causal connection between the offending conduct and the resulting injury; and 4) actual loss, injury, or damages suffered by the Plaintiff." *Galentine v. Est. of Stekervetz*, 273 F. Supp. 2d 538, 544 (D. Del. 2003).

In its SATPC, AES alleges that Logistec was the "primary stevedoring company providing cargo-handling to the Barge from October 3, 2019 to January 29, 2023." D.I. 135 ¶ 11. AES alleges that, if the barge was damaged, as alleged by ATB Marine, "the alleged damage was due to the negligent stevedoring work provided by Logistec, and/or other Third-Party Defendants, and not by any act or omission of AES." *Id.* ¶ 13. AES further alleges that "Duke Energy, Mosaic, and Holcim, each chartered, utilized, loaded and unloaded the Barge at various times, both before, during and after the period August 13, 2018, through January 2023." *Id.* ¶ 19. AES alleges that the "Third-Party Defendants owed a duty to AES and [ATB Marine] to load, unload and handle the Barge with due care, and provide reasonable and safe care and stevedoring services to said Barge." *Id.* ¶ 23. AES further alleges that the Third-Party Defendants "were negligent and failed to take reasonable measures to prevent the alleged damage to the Barge, in breach of their obligations and duties . . . to handle the Barge with care," which resulted in AES being sued by ATB Marine and sustaining damages. *Id.* ¶¶ 24-25.

The Court declines to dismiss AES's SAPTC for failure to plead duty or actual damages. AES's SATPC alleges that the Third-Party Defendants' negligent conduct caused the alleged damage to the barge for which ATB Marine seeks to hold AES liable. AES alleges that the Third-Party Defendants owed a duty of care, breached that duty by failing to take reasonable measures to prevent damage to the Barge, and caused AES to sustain damages and be sued by ATB Marine. *See In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 207 (3d Cir. 2013). These allegations are sufficient at the pleading stage to plausible allege a claim for negligence. Moreover, the SATPC "give[s] the [Third-Party Defendants] fair notice of what [AES]'s claim[s] [are] and the grounds upon which [they] rests." *Conley v. Gibson*, 355 U.S. 41, 46 (1957). At this stage, the Court need

not decide whether AES can ultimately establish the elements of its negligence claim. That determination is more appropriately made on a more fully developed factual record.

**b. Logistec's Laches Defense to AES's Maritime Negligence Claim Cannot Be Resolved at This Stage**

Logistec also moves to dismiss AES's maritime negligence claim, contending that the claim is barred by laches because the SATPC "neither rebuts the presumption of prejudice nor offers factual allegations excusing the delay." D.I. 138 at 12. Logistec further contends that, because no federal statute of limitations applies to the claim, Delaware's two year limitations period for actions seeking damages for injury to personal property provides the applicable analogue. *Id.* at 13. Since AES filed this action, in June 2025, more than five years after the alleged damage, Logistec asserts that the limitations period has run, and that AES therefore bears the burden of rebutting the resulting presumption of laches. *Id.*

AES disagrees, contending that Florida's four year statute of limitations is the proper analogue because "the underlying incident occurred in Florida, and the contracts at issue were negotiated, prepared, and executed in Florida." D.I. 145 at 5 (cleaned up). AES further contends that Logistec maintains substantial connections to Florida, such as the presence of a registered agent and corporate leadership, a principal and mailing address, and operations of stevedoring at multiple terminals. *Id.* In AES's view, Florida has the most significant relationship with the conduct underlying this dispute, and therefore the limitations period has not run. *Id.*

As discussed *supra* § III.B.2, the timeliness of maritime claims are governed by laches and, therefore, not subject to an applicable statute of limitations. *See Lasseigne*, 397 F. Supp. at 472-473. Courts look to the limitations period applicable to the most analogous state-law claim as a benchmark for determining whether the plaintiff's delay is presumptively unreasonable. *United New York Sandy Hook Pilots Ass'n*, 394 F.2d at 74. However, because "[t]he analogy to the state

statute of limitations is only an analogy and not a rule," it is not dispositive of the issue of laches. *Kane*, 189 F.2d at 305.

The parties dispute which state provides the appropriate analogous limitations period. However, neither party, nor the Court, have identified any controlling authority within this District conclusively resolving whether the analogous limitations period for purposes of laches should be drawn from the forum state or the state in which the alleged damage occurred. A court in the Western District of Pennsylvania has considered the period within which the forum state's statute of limitations would require the corresponding action at law to be commenced. *Mon River Towing, Inc. v. Indus. Terminal & Salvage Co.*, No. 06-1499, 2009 WL 904701, at *4 (W.D. Pa. Mar. 31, 2009) ("The analogous statute of limitations is the statutory period of time within which the forum state would require a corresponding civil action at law to be commenced by the plaintiff."). In contrast, a court in the Eastern District of Pennsylvania held that the appropriate limitations period is the state "whose interest in the outcome is the greatest," which requires consideration of the "state with the most significant contacts to the transactions which are the basis of the lawsuit." *Worldwide Marine Trading Corp. v. Marine Transp. Servs., Inc.*, 545 F. Supp. 156, 163 (E.D. Pa. 1982). Delaware's borrowing statute provides an additional indication of how Delaware treats claims arising outside the state. Section 8121 provides that, when a cause of action arises outside Delaware, the shorter of Delaware's limitations period and the limitations period of the state where the cause of action arose applies. 10 *Del. C.* § 8121. Here, Delaware's limitations period of two years is the shorter period. The Court therefore concludes that the two year period is the appropriate benchmark for the laches analysis.

Having found that Delaware's two year limitations period is the appropriate analogous period, the Court concludes that the period has elapsed. The alleged barge damage occurred

between October 3, 2019 and January 29, 2023. *See supra* § III.B.2.b. AES filed its first Third-Party Complaint in June 2025. *See* D.I. 48. Thus, AES's negligence claim falls outside the two year analogous period, and AES "bears the burden on both inexcusable delay and prejudice (though [it] avoids laches by carrying the burden on either)." *Lasseigne*, 397 F. Supp. at 473 (cleaned up).

The Court finds that the present record is insufficient to resolve whether laches bars AES's maritime negligence claim at this stage. The parties dispute when AES became aware of the alleged damage to the barge, when AES reasonably should have understood that Logistec might be responsible, and when Logistec received sufficient notice of AES's claim to investigate and preserve evidence. These factual disputes bear directly on whether AES's delay was excusable and whether Logistec suffered prejudice as a result of that delay. Although the expiration of an analogous limitations period gives rise to a presumption of inexcusable delay and prejudice, the presumption is rebuttable, and the Court cannot fairly determine on the present record whether AES has overcome it. *New Jersey v. RRI Energy Mid-Atl. Power Holdings, LLC*, No. 07-5298, 2010 WL 3958777, at *10 (E.D. Pa. Sept. 30, 2010) ("[A] laches defense involves fact questions. Therefore, a decision as to the applicability of the laches defense can only be made through a thorough examination of the facts and should not be dismissed in pretrial motions.") (cleaned up). Thus, the Court cannot to resolve Logistec's laches defense for AES's negligence claim at the motion to dismiss stage. The parties may develop the factual record through discovery, after which Logistec may renew its laches defense. Because factual disputes at this stage must be resolved in AES's favor, the Court denies Logistec's motion dismiss based on laches. *See Nat'l Rifle Ass'n of Am.*, 602 U.S. at 181 (2024).

**2. The Court Denies Logistec's Motion to Dismiss AES's Claim for Breach of Implied Warranty of Workmanlike Performance Without Prejudice**

Logistec next moves to dismiss AES's claim for breach of implied warranty on the grounds that the claim is time-barred under the doctrine of laches. D.I. 138 at 19. Logistec contends that AES's claim for breach of implied warranty is based on the same alleged conduct and damages asserted in AES's negligence claim. *Id.* In Logistec's view, "AES had ample opportunity to assert this claim shortly after the discharge operations concluded, yet it waited nearly five years to do so." *Id.* Logistec further contends that, similar to the negligence claim, the delay deprived it of a meaningful opportunity to inspect and evaluate the damage to the barge. *Id.* at 20. According to Logistec, the resulting prejudice is particularly significant in the context of warranty claims, which often turn on the condition of the work as performed. *Id.*

A claim for breach of implied warranty of workmanlike performance arises under general maritime law, and no federal statute of limitation govern such claims. *United New York Sandy Hook Pilots Ass'n*, 394 F.2d at 74. In the absence of an applicable statutory limitations period, the doctrine of laches provides the applicable measure of timeliness. *Id.* As explained *supra* § III.B.2, courts may look to a relevant state's statute of limitations as a benchmark in assessing whether the doctrine applies. *Id.* In Delaware, the applicable limitations period for contractual claims is three years. *See* 10 *Del. C.* § 8106(a).

In response, AES does not dispute the applicability of the limitations period or identify any alternative limitations period. D.I. 145 at 13. Instead, AES states that it "will not discuss laches further because its claims fall within the statute of limitations." *Id.* "Out of an abundance of caution," AES nevertheless argues that it properly pleads sufficient facts to support its claim for breach of implied warranty of workmanlike performance, while conceding that Logistec neither

argued or moved to dismiss for failure to state a claim. *Id.* Because Logistec moved to dismiss based on laches, the Court will address only the issue raised in Logistec's motion.

The Court finds that Delaware's three year limitation period is the appropriate analogue for the same reasons discussed above. *See supra* § III.C.2.a (discussing the absence of controlling authority selecting between the forum state's and situs state's limitations period). Since the alleged barge damage occurred between October 3, 2019 and January 29, 2023 and AES's third-party complaint was filed in June 2025, AES's claim for breach of implied warranty of workmanlike performance is within the three year analogous period. Thus, Logistec bears the burden on both inexcusable delay and prejudice. *See Lasseigne*, 397 F. Supp. at 473 (cleaned up).

The Court finds that the present record is insufficient to resolve Logistec's laches defense at this stage. Logistec reiterates its prior arguments that AES's delay was inexcusable and that the delay prejudiced Logistec by preventing it from meaningfully inspecting the barge to assess the alleged damage. D.I. 138 at 20. AES, however, disputes when it received information concerning the damage. The parties' competing accounts raise factual questions concerning notice, knowledge, and the extent of Logistec's opportunity to inspect the alleged damage. Those questions are relevant to whether AES's delay was excusable and whether Logistec suffered prejudice. At this stage, the Court cannot resolve the factual disputes on the present record. *See RRI Energy Mid-Atl. Power Holdings, LLC*, 2010 WL 3958777, at *10. The parties may develop the factual record through discovery, after which Logistec may renew its laches defense. Because factual disputes at this stage must be resolved in AES's favor, the Court denies Logistec's motion dismiss based on laches. *See Nat'l Rifle Ass'n of Am.*, 602 U.S. at 181 (2024).

### 3. The Court Denies Third-Party Defendants' Motion to Dismiss AES's Indemnity Claims

Third Party Defendants move to dismiss AES's claims for indemnity, contending that the claim fails because the relief sought is not available for a claim arising from a breach of contract claims, only tort-based claims. D.I. 138 at 21; D.I. 151 at 12-14; D.I. 168 at 10-11. AES responds that it has not asserted a breach of contract claim, rather a claim for negligence. D.I. 145 at 14. AES contends that "while AES's equitable indemnity claim derives from its contract with [ATB Marine], claims against [the Third-Party Defendants] are based on [Third-Party Defendant]'s negligent acts." *Id.* Therefore, according to AES, it has sufficiently alleged a claim for indemnity. *Id.*

"Under general maritime law, an alleged tortfeasor may seek contribution, indemnity, or apportionment from one who may be comparatively negligent or a joint tortfeasor." *Ondimar Transportes Maritimos, LTDA v. Beatty St. Props., Inc.*, No. H-07-1223, 2008 WL 45793, at *3 (S.D. Tex. Jan. 2, 2008), *aff'd sub nom. Ondimar Transportes Maritimos v. Beatty St. Props., Inc.*, 555 F.3d 184 (5th Cir. 2009). In the maritime context, indemnification may be sought either under a maritime contract or under a theory of primary/secondary negligence based on a maritime tort. *M & O Marine, Inc. v. Marquette Co.*, 730 F.2d 133, 135 (3d Cir. 1984). Thus, a passively negligent party in admiralty may recover indemnity damages from a primary negligent party. *SPM Corp. v. M/V Ming Moon*, 22 F.3d 523, 526 (3d Cir. 1994). This principle also allows indemnification where the indemnitee's liability arises from its contractual relationship with plaintiff in the underlying suit, and was triggered by the indemnitor's unlawful conduct. *Id.*

The Court finds that AES has sufficiently alleged a claim for indemnity. AES alleges that the Third-Party Defendants' negligence contributed or caused the damage underlying ATB Marine's claim against AES, and that Third-Party Defendants should be held liable for any liability

incurred by AES. D.I. 135 ¶ 32; *see SeaRiver Mar., Inc. v. Indus. Med. Servs., Inc.*, 983 F. Supp. 1287, 1298 (N.D. Cal. 1997) (recognizing a legal basis for indemnity where a party is held liable by virtue of its relationship to another and the underlying harm was caused by another's negligence); *see also SPM Corp.*, 22 F.3d at 526. Therefore, AES has sufficiently pled a claim for indemnification under a theory of primary/secondary negligence.

**4. The Court Denies Mosaic and Amrize's Motion to Dismiss AES's Contribution Claim**

Mosaic and Amrize move to dismiss AES's claim for contribution, asserting that contribution is unavailable for claims of breach of contract. D.I. 151 at 13; D.I. 168 at 11. AES responds that it has not asserted a breach of contract claim. D.I. 156 at 8. AES contends that its SATPC "expressly alleges that [the Third-Party Defendants'] negligent conduct in loading, unloading, and handling the barge caused or contributed to" the alleged damage for which AES now faces liability to ATB Marine. *Id.* AES further contends that "these allegations sound squarely in tort," and therefore its claim for contribution has been properly pled. *Id.*

"Maritime common law does recognize a right of contribution between joint tort-feasors." *In re McAllister Towing & Transp. Co., Inc.*, No. 02-858, 2004 WL 2009330, at *5 (E.D. Pa. Sept. 9, 2004), *aff'd*, 432 F.3d 216 (3d Cir. 2005); *Pastore v. Taiyo Gyogyo, K.K.*, 571 F.2d 777, 783 (3d Cir. 1978). Under maritime law, a right of contribution exists if the party seeking contribution and the party from whom contribution is sought are joint tortfeasors. *See Pastore*, 571 F.2d at 783; *see also Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of concurrent fault."). Joint tortfeasors are two or more persons jointly or severally liable in tort for the same injury, whether or not judgment has been recovered against all or some of them. *See* 10 *Del. C.* § 6302. However, "where multiple parties may be at fault, issues of comparative fault, joint and several liability, and contribution are inherently fact-

dependent and not susceptible to resolution as a matter of law at the pleading stage." *Quantum Leap Charters, LLC v. Est. of O.K.*, No. 4:24-CV-00271, 2026 WL 776192, at *3 (D.S.C. Mar. 19, 2026).

The Court finds that AES has sufficiently pled a claim for contribution. Although AES's alleged obligation to ATB Marine arises from the Time Charter Contracts, AES alleges that Third-Party Defendants' negligent conduct caused or contributed to the alleged barge damage underlying ATB Marine's claim. The distinction between AES's contractual obligation and Third-Party Defendants' alleged tortious conduct does not, at this stage, require dismissal. The SATPC alleges that Third-Party Defendants' conduct contributed, in whole or in part, to the alleged damage for which AES may be held liable. D.I. 135 ¶ 36. Whether the parties ultimately share the requisite common liability for purposes of contribution, and the extent to which each party is responsible for the alleged damage, presents a factual dispute that is more appropriately resolved on a more fulsome record. *See Quantum Leap Charters, LLC*, 2026 WL 776192, at *3. Accepting AES's allegations as true and drawing all reasonable inferences in its favor, the Court finds that AES has sufficiently alleged a claim for contribution under maritime law.

**5. The Court Dismisses AES's Claim for Declaratory Relief**

Third Party Defendants move to dismiss AES's claim for declaratory relief, contending that the claim fails because AES's SATPC does not articulate any viable claim or issue that differs from its previously asserted claims and has alleged no facts from which the Court could find that a case or controversy exists to warrant the issuance of declaratory judgment. D.I. 138 at 21-22; D.I. 151 at 14-15; D.I. 168 at 13-14. AES responds that declaratory relief is the proper mechanism for AES to understand its rights and legal relationships with any interested party, and that "the facts alleged, under all the circumstances, show that there is a substantial controversy between the

parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of declaratory judgment." D.I. 145 at 17-18.

AES's claim for declaratory relief is limited to two paragraphs in the SATPC. The SATPC alleges that an actual controversy and dispute exist "as to the rights and obligations under certain contracts and agreements," such that a "judicial declaration of the rights and obligations of all parties" is necessary to determine "the proportionate share of the defense, indemnity and/or contribution obligations" of AES and the Third-Party Defendants, if any. D.I. 135 ¶ 39. The SATPC further alleges that a "judicial declaration is necessary" so that AES and the Third-Party Defendants "may know their respective rights and obligations under the aforesaid contracts." *Id.* ¶ 40.

The Court finds that AES fails to sufficiently plead a claim for declaratory relief. As an initial matter, declaratory relief is a remedy, not an independent cause of action. *Taggart v. Wells Fargo Bank, N.A.*, 723 F. App'x 127, 129 (3d Cir. 2018) ("[D]eclaratory relief is not a claim."). Thus, to the extent that AES purports to assert a claim for declaratory judgment, that claim fails. Although AES alleges the existence of an actual controversy concerning the parties' contractual rights and obligations, AES does not identify any contractual provisions between AES and the Third-Party Defendants, allege any competing interpretations of those provisions, or otherwise allege facts showing a concrete dispute in the SATPC. *See* D.I. 135 ¶¶ 39-40. Instead, AES merely asserts that a judicial declaration is "necessary" to determine the parties' rights. *Id.* Such conclusory allegations are insufficient to establish an actual controversy or state a claim for declaratory relief. *See Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008), *aff'd*, 606 F.3d 119 (3d Cir. 2010) (finding that where a particular count "d[id] not identify

the source of the alleged rights for which [the plaintiffs sought] declaratory relief [it] therefore fail[ed] to state a claim upon which relief may be granted").

### 6. The Court Denies the Motion to Stay Discovery

In light of the Court's determination that ATB Marine's Complaint and AES's SATPC sufficiently state claims upon which relief may be granted, there is no basis to stay discovery. Thus, the Court denies-as-moot the Motion to Stay Discovery.

## IV. CONCLUSION

For all the foregoing reasons, the Court grants Duke Energy's Motion to Dismiss (D.I. 161); grants-in-part and denies-in-part Logistec's Motion to Dismiss AES's SATPC (D.I. 137); grants-in-part and denies-in-part Mosaic's Motion to Dismiss (D.I. 150); grants-in-part and denies-in-part Amrize's Motion to Dismiss (D.I. 167); denies Logistec's Motion to Dismiss ATB Marine's Complaint (D.I. 86); and denies the Motion to Stay Discovery (D.I. 177; D.I. 182; D.I. 184).

* * * * *

WHEREFORE, at Wilmington this 19th day of August 2026, **IT IS HEREBY ORDERED** that:

1. Third-Party Defendant Logistec Gulf Coast LLC ("Logistec") Motion to Dismiss Plaintiff ATB Marine, LLC's Complaint (D.I. 86) is **DENIED**;

2. Logistec's Motion to Dismiss Defendant and Third-Party Plaintiff AES Puerto Rico, L.P.'s ("AES") Second Amended Third-Party Complaint (D.I. 137) is **GRANTED** with respect to AES's declaratory relief claim and **DENIED** on all other claims;

3. Third-Party Defendant Mosaic Global Sales, LLC's ("Mosaic") Motion to Dismiss ATB Marine's Complaint and AES's Second Amended Third-Party Complaint (D.I. 150) is **GRANTED** with respect to AES's declaratory relief claim and **DENIED** on all other claims;

4. Third-Party Defendant Duke Energy Florida, LLC's ("Duke Energy") Motion to Dismiss AES's Second Amended Third-Party Complaint (D.I. 161) is **GRANTED**;

5. Third-Party Defendant Amrize Cement Inc.'s ("Amrize") Motion to Dismiss ATB Marine's Complaint and AES's Second Amended Third-Party Complaint (D.I. 167) is **GRANTED** with respect to AES's declaratory relief claim and **DENIED** on all other claims; and

6. Mosaic's Motion to Stay Discovery Pending Resolution of the Motion to Dismiss (D.I. 177) that Amrize and Duke Energy join (D.I. 181; D.I. 183) is **DENIED-AS-MOOT**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE